**James J. BENNETT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14551.**

United States Court of Appeals
Ninth Circuit.

June 15, 1956.

George B. Grigsby, Anchorage, Alaska, for appellant.

Theodore F. Stevens, U. S. Atty., George M. Yeager, Asst. U. S. Atty., Fairbanks, Alaska, for appellee.

Before STEPHENS, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Very early in the morning of June 21, 1953, three cars, a Cadillac, a Mercury and a Buick, assembled on the outskirts of Odessa, Texas, at the Moonlight Bar. The Cadillac was registered in the name of appellant, James J. Bennett. Title to the Mercury was in the name of Bennett's wife, Fern Bennett. The Buick was owned by Wesley Kehert. All of the parties had a common purpose to drive from Odessa to Fairbanks, Alaska. The party consisted of Marilyn Jean Casey, Norma Crosby, Carol Ward, Kehert, Bennett and his wife. The overland journey through Denver, Spokane and Canada took about ten days.

In November, 1953, the grand jury at Fairbanks indicted Kehert, Miss Crosby

and the Bennetts on a charge of transporting Miss Casey from Texas to Alaska in interstate commerce for the purpose of prostitution. The charge involved the trip which began in Odessa on June 21. The four stood trial together in May, 1954. James Bennett and Wesley Kehert were convicted by the jury. Fern Bennett and Norma Crosby were acquitted. This is the appeal of James Bennett.

Essentially, the defendant-appellant has two points in his brief. The first is that there was insufficient evidence to sustain Bennett's conviction without the government's Exhibit "O", which should not have been admitted, he says. The second point directly attacks as reversible error the admission of the exhibit. The Exhibit, "O", is a statement obtained from Miss Casey while she was held under arrest on July 6, 1953, at Fairbanks.[1]

In this case, this court is not required to review the sufficiency of the evidence. At the close of the government's case, appropriate motions were made to test the sufficiency of the evidence as of that time. These were denied. The defendants then offered several witnesses, including James Bennett and Wesley Kehert. The government followed with other witnesses in rebuttal. The motions were not renewed.[2]

 After examining the seamy record, one gets not the slightest impression that any innocent man was convicted or that there was not enough evidence aliunde the two pre-trial statements, "O" and "P", of Miss Casey to sustain beyond a reasonable doubt James Bennett's conviction.

The jury could have concluded that Bennett, shortly before the trip to Alaska commenced, knew that Miss Casey's real profession in Galveston, Texas, was prostitution and that his and Kehert's purpose in taking her from Texas to Fairbanks was that of putting her "on the line" commercially in Alaska. Or, the circumstances were such that the jury could have been justified in believing that Miss Casey was going to Alaska as Kehert's commercial property and that Bennett was aiding and abetting Kehert in the transportation. While Bennett was not charged with transporting Miss Ward and Miss Crosby to Alaska in violation of any statute, there was evidence from which the jury could have concluded that they had been selling themselves under the Bennett management in Texas and would continue to do so in Alaska. In the light of that, the jury could have considered along with other evidence how Miss Casey happened to be in the party.

At the trial, Miss Casey, James Bennett and Kehert testified that each was paying his portion of the travel from Odessa to Alaska and prostitution was at no time discussed. The jury may not have believed that or the jury could have believed that the men made the women pay their own way and that prostitution was not discussed en route. Still there was no doubt as to the fact of the trip and enough circumstances to show the purpose of prostitution was understood by all.

It is interesting that at the time the party crossed into Canada from the State of Washington, Bennett alone crosses in the Cadillac. Kehert is by himself in his Buick and Mrs. Bennett, Miss Casey, Miss Ward and Miss Crosby motor across in Mrs. Bennett's Mercury. There was evidence, the business of crossing the line having been negotiated, the parties stopped the cars a few miles down the road and rearranged themselves in the cars.[3] It was possible that all such doings were a mere coincidence. On the

---

1. Another exhibit, "P", is a condensation of Exhibit "A" which she swore to on July 8, 1953, before the United States Commissioner at Fairbanks. On July 8, she was no longer in custody.

2. United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202.

3. Passing the immigration station into Alaska located at Tok, the same distribution system was repeated: James Bennett driving the Cadillac, Kehert in his Buick and the four women in the Mercury.

other hand, neither the jury nor this court needs the help of Professor Wigmore to draw legitimate inferences of certain illegitimacy in the event.

A very significant circumstance on the safari was the fact that gasoline tickets were produced showing credit card purchases by Bennett of gasoline for all three cars on the trip. Apparently, he bought most of the gasoline. The jury may have disbelieved Bennett when he said he was repaid by the travellers for their proportionate share on each purchase. His demeanor in asserting that he was repaid very well may have led the jury to properly conclude that the expedition was very much his commercial business.[4]

Coming to the matter of the admission of the pre-trial statement of Miss Casey, Exhibit "O", this court is in poor position to review the appellant's assertion of error. In his designation of record for appeal, appellant did not designate any exhibits. But the transcript of testimony is here and from it the character of the two exhibits, "O" and "P", is fairly well established.

Exhibit "O" was a rather detailed statement made by Miss Casey on July 6, 1956, when she was under arrest. The statement was taken by officers of the Federal Bureau of Investigation. It is a narrative of her connections with Kehert and Bennett and of the trip from Odessa to Fairbanks. The statement, "O", was not under oath but was read and signed by Miss Casey contemporaneously with its making.

The occasion for offering the exhibits, "O" and "P", was this: Upon the trial, Miss Casey was presented as the first prosecution witness. Forthwith, she proceeded to attempt to establish the innocence of all defendants. She said the trip to Alaska was not what the government thought at all. She was engaged to marry Kehert; she had come along to find employment as a "shake" dancer in Fairbanks; she did share the same room at nights with Kehert en route, but only had intercourse with him in Canada (not in the States or in Alaska); and she had paid her own portion of the travel, lodging and eating expense. So she said.

At this point the prosecutor was obliged to do something. He brought forth the prior inconsistent written statements "O" and "P" and was permitted to confront Miss Casey with them. He questioned Miss Casey as to many of the statements in Exhibit "O" and, seriatim, she repudiated them. She pleaded that she had given the statements un-

---

4. The record abounds with instances where the jury may have thought the inherent improbability of versions related by Bennett, when added to admitted circumstances, was adequate to prove exactly what the government wanted to prove. For example, immediately prior to leaving Odessa, Texas, Kehert and Bennett were in Galveston, Texas. There they picked up Miss Casey. She accompanied them to Odessa. The prosecutor asked: "When was the first time you found out she (Miss Casey) was going with you to Alaska?" Bennett replied: "When they (Kehert and Miss Casey) came by the room to pick me up, I was too sick to get up and go. I got up and laid down in the back seat of the car and vomited nearly all the way to Odessa." (Odessa is in West Texas. Galveston is in Southeast Texas. The distance is 639 miles.)

Then the following occurred:

"Q. Again my question is, when was the first time you found out Miss Casey was going to Alaska with you?

"A. First time I seen Miss Casey when they came by the room (in Galveston). First time I knew anything about any Alaska business was in Odessa.

"Q. And who was there then?

"A. I don't remember everybody that was there.

"Q. Was your wife there?

"A. I couldn't say truthfully.

"Q. Was Mr. Kehert there?

"A. I don't know for sure.

"Q. You just don't know anything for sure then, do you, Mr. Bennett?

"A. I don't know that."

From that sort of stuff, plus the addition of other circumstances in the case, the jury could have concluded the trip was a business venture and that Kehert and Bennett were taking her there to ply her trade.

der duress, the duress being the reward, she claimed, of getting out of jail.

 The objections here raised to Exhibit "O" are not good for several reasons. Some may be listed:

1. The exhibit was not designated for the record on appeal.

2. If it is assumed that enough extracts are here for this Court to consider the nature of Exhibit "O", then it is obvious no adequate objection was made to "O" below. The objections were on the grounds it was coerced, was for a promise, was not sworn to and would have no bearing on the issues of this case.

3. When asked, the oral questions of the prosecutor to Miss Casey concerning her various inconsistent statements the questions were proper under the Alaska statutes.[5] Afterwards, the defendant's attorney took the written statement, "O", and asked Miss Casey about other portions of it not theretofore inquired about by the prosecutor. At this point, the court was then entitled to put the whole statement before the jury, on the prosecutor's request. It should be noted the jury was instructed as to the limited purpose for which the exhibit was received. The particular instruction given was somewhat inartfully drawn, but it was not bad. Further, no exception was taken to it.

4. Upon the trial, an unintelligible objection was made to Exhibit "P". No complaint of the reception of "P" is made here. Yet "P" is a condensation of "O", say the witnesses who testified about "P". Where the two cover the same ground, an objection to one and not the other stands on a pretty poor base either on the trial or on appeal so far as asserting prejudicial error.

Exhibits "O" and "P", as one gleans their nature from the record, are not immaterial in any logical sense. Made by people like Miss Casey, who obviously falsified the facts either in Exhibit "P" or at the trial, the prior statement even may come closer to the truth then when the questioning is bi-lateral. But as exclusionary rules have developed, such statements generally are ruled incompetent for such reasons as "unsworn to," "no confrontation," and "no opportunity to cross-examine." But to the exclusionary rules there are exceptions. The receipt of "O" and "P" here seems to have been quite proper under established exceptions.

Considering the case generally, it is possible that counsel who represented all of the defendants at the trial (not the one who wrote the briefs after the record had been designated) may have created some prejudice against his clients. Still there was not enough prejudice (if any) to prevent the acquittal of Mrs. Bennett and Miss Crosby. And there seems yet to be no authority for new trials for defendants because defense counsel may snarl at a witness. Typical of Bennett's counsel's conduct on the trial was his first question on cross-examination of a government witness: "Defense counsel to witness: Q. 'When did you quit using narcotics, Mr. Wright?'"

In searching for plain error an appellate court must naturally evaluate the record, poorly equipped as it is to do so. It is this court's impression that, when James J. Bennett finished testifying, there was little hope that the jury would find him anything but a man guilty as charged with the obvious implication that he was taking Miss Casey to Alaska to sell herself either for his gain, the gain of Kehert, or the gain of both Kehert and himself.

Judgment affirmed.

---

5. A.C.L.A.1949, § 58–4–56, § 58–4–59 and § 58–4–62.