**UNITED STATES of America**

v.

**Patricia L. JONES, a/k/a Cassie.**

**UNITED STATES of America**

v.

**Mark C. SUNG, Appellant.**

Nos. 88–3008, 88–3017 to 88–3019 and 88–3098.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 21, 1989.

Decided July 27, 1990.

Cynthia S. Mazur, co-counsel (appointed by this Court), with whom Steven H. Goldblatt (appointed by this Court), with whom Maureen Frances Del Duca and Dori K. Bernstein, attorneys, were on the brief, for appellant Demino in No. 88–3018.

William Garber (appointed by this Court), for appellant Schimpf in No. 88–3019.

James G. McGuire (appointed by this Court), for appellant Frey in No. 88–3017.

Dennis M. Hart (appointed by this Court), for appellant Jones in No. 88–3008.

Richard S. Stern (appointed by this Court), for appellant in No. 88–3098.

Virginia C. Veltrop, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee in all cases.

Before RUTH B. GINSBURG, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The four female appellants in this case were among seven women convicted, after a jury trial, of violating the Travel Act, 18 U.S.C. § 1952, through their participation in what the Government contends was "a

prostitution business." The sole male appellant was convicted of violating both the Travel Act and the Mann Act, *id.* § 2421, for his part as a telephone dispatcher for the allegedly unlawful enterprise. Because the conduct charged in the indictment does not make out a violation of the cited section of the Mann Act, and the district court erred in instructing the jury under the Travel Act, we reverse all of the convictions.

## I. BACKGROUND

The Travel Act, 18 U.S.C. § 1952, provides in relevant part:

(a) Whoever ... uses any facility in interstate ... commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or ...

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"Unlawful activity" is defined to include, *inter alia,* "any business enterprise involving ... prostitution offenses in violation of the laws of the State in which they are committed." *Id.* § 1952(b)(1).

The indictment charged that the female appellants

did unlawfully, knowingly and willfully use and cause the use of a facility in interstate commerce, that is, the interstate banking system, ... with the intent to distribute the proceeds of a prostitution business, an unlawful activity involving prostitution offenses in violation of the laws of the District of Columbia, the State of Maryland and the Commonwealth of Virginia, and thereafter ... did perform, attempt to perform, and cause to be performed acts to promote ... and facilitate the promotion ... of a prostitution business.

In similar terms the indictment charged them with using "the interstate telephone system" in furtherance of the alleged prostitution business.

The Mann Act, *id.* § 2421, provides:

Whoever knowingly transports any individual in interstate ... commerce ... with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined ... or imprisoned not more than five years, or both.

The indictment charged that the male appellant

unlawfully, knowingly and willfully did transport and cause the transportation in interstate commerce ... of the women specified for the purpose of prostitution and other immoral purposes.

All appellants were also charged under the aiding and abetting statute, *id.* § 2, which provides that

(a) Whoever commits an offense against the United States or aids, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

At trial, the appellants contended that the corporation for which they worked, Congressional Liaison, Inc., was a legitimate escort and dating referral service that neither offered nor provided the services of prostitutes and that it is not responsible for any act of prostitution in which an individual escort may have engaged, in which case it would presumably not be "a business enterprise involving ... prostitution offenses" within the scope of the Travel Act; and that the appellants therefore did not violate that law by acting in furtherance of the business. From the appellants' account, any prostitution that may have occurred was no more in furtherance of their business than would be such prostitution as might occur whenever any person is brought into contact with potential sexual partners in the course of his or her work; presumably a door-to-door sales-

person or any person employed in an unsupervised work environment could equally well sink into degradation without subjecting the business for which he or she is supposed to be working to criminal liability.

The defense adverted to a number of factors that lent Congressional Liaison the appearance of a legitimate enterprise. The business was incorporated, kept detailed business accounts, and advertised itself as an escort service in newspapers and telephone directories. According to former escorts, who testified as government witnesses, the business never instructed the escorts to engage in sexual acts with their clients. Indeed, Congressional required each escort to sign an agreement in which the company agreed to provide referral and other services and the escort agreed not to engage in any illegal acts, specifically including prostitution.

Through the testimony of former employees, customers, police officers, and the records custodians of banks and credit card companies, the Government sought to prove that the escort service was operated as a prostitution business, to establish the appellants' involvement, and to link their activities to interstate commerce. The evidence established that the female appellants were employed as escorts and that the male appellant (and a co-defendant) were employed as telephone dispatchers. The dispatcher would take telephone orders for escorts from customers responding to published advertisements. In a typical transaction, the dispatcher would record each caller's name, address, and credit card number in addition to specifications concerning the desired physical appearance and age of the escort; call the authorization center of the credit card company; select an escort; and notify her by telephone of the name and address of the customer. Upon meeting the customer, the escort would call the dispatcher in order to get the authorization code for the customer's credit card. In most cases she would then process the credit card voucher for her customer and later mail the credit card charge slip to Congressional, which would present the slip to its Maryland bank or mail it to the credit card company. These various telephone calls and submissions of credit card charge slips for processing provided the element of interstate commerce upon which the Government relied in order to make out an offense under the Travel Act. With regard to the element of interstate transportation required under the Mann Act, the Government attempted to show that the business, with the male appellant's aid, "cause[d] the transportation" of the escorts, by providing the names and addresses of customers and the financial incentive to travel interstate.

The appellants' primary point on appeal of their Travel Act convictions is that the district court committed reversible error when it instructed the jury that it could find a violation of the Travel Act without finding at least an intent to promote the violation of a predicate state offense. With regard to the Mann Act conviction, the male appellant's principal argument is that the evidence failed to show that he "transported" the female escorts interstate as required by the statute; he contends that the escorts physically transported themselves and that his mere provision of the inducement for such auto-motion is legally insufficient. We reverse all of the convictions upon these grounds, and therefore do not reach the appellants' various challenges to the sufficiency of the evidence, to the conduct of the prosecutor, and to the court's evidentiary rulings.

## II. THE TRAVEL ACT

In order to convict the appellants under the Travel Act, the Government had to prove that the escort service was an "unlawful activity," to wit, as alleged in the indictment, a "prostitution business." The appellants contend that the instructions given to the jury authorized it to convict them without finding that they brought about or intended to bring about any act that would indeed violate any state law.

### A. The Role of State Law

■ Where the Government would prove a violation of the Travel Act by establishing that a defendant made use of, or aided

and abetted another in making use of, a facility in interstate commerce for the purpose of promoting an unlawful activity, we adopt the position, now held by most of the circuits, that the prosecution must show that the activity was unlawful under a specific state law. *See United States v. De-Luna,* 763 F.2d 897, 907 (8th Cir.1985); *United States v. Bertman,* 686 F.2d 772, 774 (9th Cir.1982); *United States v. Goldfarb,* 643 F.2d 422, 430 (6th Cir.1981); *United States v. Dansker,* 537 F.2d 40, 47 (3d Cir.1976); *United States v. Brown,* 505 F.2d 261, 262 (4th Cir.1974); *United States v. Kahn,* 472 F.2d 272, 277 (2d Cir.1973); *see also United States v. Arruda,* 715 F.2d 671, 681 (1st Cir.1983); *United States v. Walsh,* 700 F.2d 846, 854–55 (2d Cir.1983); *United States v. Hathaway,* 534 F.2d 386, 398 (1st Cir.1976). We believe that this approach is compelled by the plain language of § 1952(b), which defines "unlawful activity" as

> any business enterprise involving [*inter alia*] prostitution offenses in violation of the laws of the State in which they are committed or of the United States.

This approach is fully consistent with *United States v. Nardello,* 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). The Court there upheld the adequacy, under the Travel Act, of an indictment that charged the defendants with traveling in interstate commerce with intent to carry on "extortion." Because the law of the State in which the extortionate conduct took place prohibited it under the heading of "blackmail" rather than "extortion," the defendants argued that the indictment failed to allege the requisite violation of state law. The Court rejected that argument, stating that "the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the extortionate activity charged," which the defendants did not dispute. *Id.* at 295, 89 S.Ct. at 539.

In closing, the Court also stated that "the indictment encompasses a type of activity generally known as extortionate" and that "the acts for which [defendants] have been indicted fall within the generic term extortion as used in the Travel Act." *Id.* at

296, 89 S.Ct. at 539. On the basis of those remarks, the Fifth Circuit has taken the position that the elements of the state law prohibiting the activity are not incorporated into and made elements of the Travel Act offense. In *United States v. Conway,* 507 F.2d 1047 (1975), that court held that the district court had not committed reversible error when it failed to define arson under the relevant state law in charging the jury on the elements of a Travel Act offense. Taking *Nardello* to mean that it is sufficient if the acts charged in the indictment fall within the "generic" meaning of the predicate offense, the court concluded that "in § 1952 cases state law merely serves a definitional purpose. 'Arson' is a commonly used and understood word.... There is no requirement that the jury be instructed on the [State's] definition of arson...." *Id.* at 1051–52; *see also United States v. Rizzo,* 418 F.2d 71, 80 (7th Cir. 1969) ("Proof that a state law has actually been violated is not a necessary element of the offense defined in Section 1952."), with which compare *United States v. Zemater,* 501 F.2d 540, 544 (7th Cir.1974) (Travel Act "plain language appears to require that the activity following the travel violates the law of the jurisdiction in which it occurs").

We believe that the Fifth Circuit's reading of *Nardello* confuses the Supreme Court's holding—that the label under which a listed offense is proscribed in state law is irrelevant—with the distinct proposition that no violation of any state statute is required in order to make out a violation of the Travel Act. At most, *Nardello* establishes that, in addition to violating state law, the predicate offense must fall within the generic meaning of the offenses enumerated in § 1952(b). *See also Taylor v. United States,* — U.S. —, —, 110 S.Ct. 2143, 2157, 109 L.Ed.2d 607 (1990) (generic meaning of "burglary" as used in Career Criminals Amendments Act, 18 U.S.C. § 924(e), refers to state laws with certain elements).

The Government here "agrees that state laws are incorporated by reference into the federal Travel Act," noting only "that the circuits disagree on the question of wheth-

**538**

er these laws are completely incorporated." According to the Government, however, "[t]he jury charge adequately incorporated the state laws ... and any added comment that the laws were merely 'definitional' was insignificant when considered in context."

We will turn to the adequacy of the charge in a moment. Our point here is that in this Circuit in order to make out a violation of the Travel Act based upon an underlying violation of state law, the Government must prove that the predicate activity falls within one of the categories listed in § 1952(b) and that it is punishable under the law of the state in which it occurred. The Government must also prove that, in making use of the facilities of interstate commerce, the defendant had the intent, with respect to each element of the relevant state offense, required in order to make out a violation of the state law.

### B. The Instruction Given·

◾ The district court did read the Virginia, Maryland, and District of Columbia prostitution-related statutes to the jury, but it did not delve any further into the elements of those offenses, as it would have done if the appellants had been charged directly under them. On the contrary, the court instructed the jury:

> The state law and the District of Columbia law in this case are only definitional. These laws simply define the type of unlawful activity which is prohibited. The Government is not required to prove that the state or federal law was actually violated, although you may find that it was.

According to the appellants, this instruction implied that the jury could convict if the activities of the escort service violated only some vaguely conceived lay notion of prostitution, as opposed to a specific provision of the Virginia, Maryland, or District of Columbia criminal codes. As a result, the jury may have convicted the appellants even though, were its attention so directed, it would not have found that the appellants had the requisite intent specified by the state laws with respect to each element of

the escort service's allegedly unlawful activity.

Thus, the Government was in effect relieved of the duty to prove beyond a reasonable doubt one or more of the facts necessary to constitute an offense under the Travel Act. The Due Process Clauses of the Fifth and Fourteenth Amendments, however, require that the Government prove "beyond a reasonable doubt ... every fact necessary to constitute the crime ... charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Because the error is of constitutional significance, reversal is indicated unless we are able "to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

◾ We conclude that the court's error in this case was not harmless beyond a reasonable doubt. The issue, elided by the instructions to the jury, of what, precisely, constitutes unlawful prostitution in each relevant jurisdiction is central to the appellants' guilt or innocence. The District of Columbia, for example, prohibits solicitation and pimping, D.C.Code Ann. §§ 22–2701, 22–2707, but does not criminalize prostitution itself. In view of the invitation given the jury to convict the appellants even if the Government failed to prove that a state law was "actually violated," or that the appellants attempted or intended to bring about a violation of state law, we simply cannot conclude beyond a reasonable doubt that the jury would have found the appellants guilty had it been properly instructed. Accordingly, we have no choice but to reverse the appellants' convictions under the Travel Act.

### C. An Appropriate Instruction

◾ While we agree with the appellants that the instructions given on the Travel Act charges were ambiguous and misleading, we conclude that there are also problems with the alternative instruction that the appellants urged upon the district court and press here. The so-called "Sand instruction," drawn from 2 L. SAND, J. SIF-

FERT, W. LOUGHLIN & S. REISS, MODERN FEDERAL JURY INSTRUCTIONS (CRIMINAL) ¶ 60–10 (1988), reads:

> The defendant has been charged with traveling in interstate commerce (or using an interstate facility) to facilitate [prostitution]. The government must prove to you beyond a reasonable doubt that the activities the defendant intended to facilitate were, in fact, unlawful under [Maryland's, Virginia's, or the District of Columbia's prostitution law.] In order to prove this, the government must prove, beyond a reasonable doubt, each of the following elements of the offense of [prostitution] under [Maryland, Virginia, or District of Columbia] law.

The Government correctly points out that this instruction seems to require that the jury find a completed violation of the underlying state offense in order to convict under the Travel Act. While a defendant must have intended to facilitate each element of the offense, the Government does not have to show that he or she actually violated the state law. The language of the Travel Act makes it clear that a person can violate that law merely by "attempt[ing] to perform" a specified "unlawful activity," such as operating a prostitution business, assuming he or she has the requisite intent with regard to each element of that underlying offense.

A proper instruction would make it clear to the jury that in order to convict, they must find that the defendant specifically intended to promote (et cetera) an activity that involves all of the elements of the relevant state offense. Such an instruction would inform the jury that the defendant must have performed or attempted to perform an act in furtherance of the business, with the intent that each element of the underlying state crime be completed, but that they need not conclude that each was in fact completed.

The instruction suggested in the commentary to § 62.01 of 2 S. SALTZBURG & H. PERLMAN, FEDERAL CRIMINAL JURY INSTRUCTIONS (1985), meets these specifications. That commentary suggests that a Travel Act instruction need not actually use or define the term "unlawful activity," and that it need not inform the jury that the defendant is charged with traveling to promote prostitution in violation of the law of a particular state. Instead, the authors suggest that the court explain the elements of the indictment directly in terms of the underlying state law allegedly violated. Thus, the court would first decide whether the business activity that the defendant is charged with intending to promote is in fact prohibited by the relevant State's law. If so, then the court would instruct the jury that it must find that the defendant specifically intended to promote (et cetera) each feature of the activity that is necessary to make it unlawful under that law.

Thus, the Saltzburg and Perlman commentary properly requires the Government to prove that the defendant (1) used a facility of interstate commerce with the intent to distribute the proceeds of, or to promote (et cetera), the unlawful activity, and (2) thereafter promoted or attempted to promote, the unlawful activity, but avoids giving the possible misimpression that the state law offense must have been completed. At the same time this approach fully incorporates the elements of the relevant state law offense into the definition of the Travel Act violation.

## III. THE MANN ACT

■ The male appellant was convicted of two counts of aiding and abetting the enterprise by "knowingly transport[ing]" women in interstate commerce in violation of the Mann Act, 18 U.S.C. §§ 2421 and 2, both as set out above. The predecessor to § 2421 included a clause making it a crime to "aid and assist in transporting" an individual interstate for either of the stated purposes. 18 U.S.C. § 396b (1946). That clause was deleted in 1948, in order to reflect the enactment in 1940 of a generic aiding and abetting provision that applies to all federal offenses, *viz.* 18 U.S.C. § 2. The generic provision was intended to "remove[ ] all doubt" that one who "aids, abets, counsels, commands, induces or procures another to commit an offense is guilty as a principal, even though he inten-

tionally refrains from the direct act constituting the completed offense." H.R.Rep. No. 304, 80th Cong., 1st Sess. A5 (1947).

The indictment in this case charged that the male appellant violated §§ 2421 and 2 by aiding and abetting Congressional Liaison in "transport[ing] and caus[ing] the transportation" of women in interstate commerce, "for the purpose of prostitution." The Government argued that the business, aided by appellant acting as a dispatcher, was "so closely involved in the [women's] ongoing activities that it was the 'moving' or 'efficient' or 'effective' cause of the transportation." The evidence at trial showed, however, that the escorts made their own travel arrangements and, in a literal sense, transported themselves interstate, by car or subway; and the Government has never suggested that the escorts were either physically or psychologically coerced. Thus, notwithstanding the Government's insistence that "[t]he conduct addressed here amounted to more than mere inducement of interstate travel," and that the enterprise "direct[ed] and controll[ed] the activities of its 'escorts,'" there is a complete lack of relevant evidence to that effect. The Government emphasizes the support services that the enterprise provided, pointing out, for example, that "advertisements ... placed in publications that ensured a higher class of clients than commonly available to street prostitutes" made Congressional's "mode of operation more attractive than individual enterprise."

We accept the Government's implicit premise that one need not physically carry or accompany a person interstate in order to "transport" her; it may be enough effectively to cause her to be transported, as would clearly be the case if one were to commission another to abduct her. The problem with the Government's theory is that the conduct it would characterize as direction and control also and better fits the description of a different and complementary offense. Another provision of the Mann Act penalizes one who "knowingly persuades, induces, entices, or coerces any individual to travel in interstate ... commerce ... to engage in prostitution, or in

any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422. If § 2421 is interpreted so broadly as to encompass inducement, then § 2422 would be redundant.

The more felicitous rendering preserves a role for each section by confining § 2421 to cases in which the defendant can truly be said, personally or through an agent, to have performed the proscribed act of transporting; § 2422 covers those cases in which the defendant provides the motivation, ranging from persuasion to coercion, but the person then "travels" under her own steam, without need of anyone to "transport" her. This reading preserves the ordinary language, common-sense meaning of the distinction between "causing" and "inducing" unlawful transportation. It is also logical: the causing and inducing statutes together comprise a set that captures all instances in which a person crosses a state line, at the instance of the defendant, for an immoral purpose. The Government's interpretation of § 2421 is, in contrast, inconsistent with the language as well as the logic of the two provisions viewed together.

Most of the cases that the Government cites do not require the broad interpretation, for which it contends, of what it means, under § 2421, to transport someone or cause her to be transported. In *Bennett v. United States*, 234 F.2d 675 (9th Cir. 1956), the court upheld a defendant's conviction under § 2421, even though the women with whom he traveled "rearranged themselves in the cars" so that the defendant crossed the state boundary in a separate vehicle. *Id.* at 676. Not only had the defendant paid for the gasoline used in both cars, he also physically accompanied the women, albeit in a separate car. In *Ege v. United States*, 242 F.2d 879 (9th Cir.1957), the defendant made advance arrangements for and gave expense money to a woman for her to travel interstate. According to the court, which "assume[d] that § 2421 requires a little more 'causing' beyond just 'persuading and inducing,'" the defendant's conduct there was "no different than if he had presented [her] with a

plane or train ticket and told her to go." *Id.* at 880. In *Lattanzio v. United States*, 243 F.2d 801 (9th Cir.1957), the defendant lent a woman money to cover her transportation expenses. In each of these cases, it seems that the degree of direction and control exercised by the defendant really did amount to more than mere inducement; although the defendant did not physically transport the woman, it could fairly be said that he caused her to be transported interstate.

The case that most squarely conflates inducing someone to travel with causing her transportation is *Wagner v. United States*, 171 F.2d 354 (5th Cir.1948). The court in that case said that a sufficiently attractive offer could amount to "more than a mere inducement" if it is "the procuring, efficient, and, in fact, only cause of the unlawful transportation." *Id.* at 363. At the same time, the court apparently tried to preserve a role for § 2422 by distinguishing from lesser offers those that are so attractive as to overbear the free will of the offeree—the "offer you can't refuse"—which triggers the protective policy underlying § 2422. We find this reasoning unpersuasive. It undermines the assumption of free will that supports the concept of criminal responsibility; not surprisingly, therefore, it is contrary to ordinary usage, which does not treat an offer of money (or support services), made to a competent adult, as tantamount to coercion, regardless of how attractive its terms. We therefore decline to adopt the distinction drawn in *Wagner;* in our view, the activities of the business in which the appellant participated may have induced the escorts to travel interstate but did not cause them to be transported within the meaning of § 2421.

At oral argument, counsel for the Government conceded that the only reason this case was not brought under the inducement statute was that, at the relevant time, that statute made the use of a common carrier an element of the offense. With respect to the specific episodes charged, which were presumably the ones for which the Government thought it had the best evidence, that requirement could not be satisfied. Now that the common carrier requirement has been eliminated from § 2422, however, affirming this conviction under § 2421 would give the Government complete discretion in charging future defendants under either § 2421 or § 2422. This result is not only unreasonable under the canons of statutory construction; in light of the complementary nature of the two provisions, it is also unnecessary.

### IV. CONCLUSION

For the reasons discussed above, the appellants' convictions are

*Reversed.*