UNITED STATES of America,
Appellee,

v.

Beverly M. HOLLAND, aka "Candy,"
Defendant–Appellant.

No. 03–1204.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 23, 2003.

Decided: Aug. 23, 2004.

Thomas A. Zonay, Ford & Zonay, P.C., Woodstock, Vermont, for Defendant–Appellant.

William B. Darrow, Assistant United States Attorney (Peter W. Hall, United States Attorney, and David V. Kirby, First Assistant United States Attorney, on the brief), Burlington, Vermont, for Appellee.

Before: WINTER, CABRANES, and SACK, Circuit Judges.

WINTER, Circuit Judge.

◼ Beverly M. Holland appeals from her convictions by a jury before Judge Sessions. Holland was convicted on one conspiracy and seven substantive counts [1] under the Mann Act, 18 U.S.C. §§ 2421, 2422, 2423(a), and the aiding and abetting statute, 18 U.S.C. § 2, based on her interstate transportation of women in the course of her operating a Vermont–New York prostitution ring. On appeal Holland argues that the district court erred by: (i) refusing to instruct the jury that the transportation of coconspirators could not serve as the basis for a Mann Act conviction, (ii) not admitting as evidence filings from the Vermont–New York Mann Act prosecution of another person, and (iii) denying her various motions for judgments of acquittal.[2] We find no error and affirm.

## BACKGROUND

From about April 2000 to January 2001, Holland ran a prostitution business out of her apartments in Burlington, Vermont and the Bronx, New York.[3] She recruited

---

1. Specifically, Holland was found guilty on one count of conspiring to knowingly transport, and to knowingly persuade, induce, entice, or coerce individuals to travel from Vermont to New York for prostitution purposes in violation of 18 U.S.C. §§ 2421, 2422, and 2423(a) (Count 1); on five counts of knowingly transporting individuals under the age of 18 from Vermont to New York for prostitution purposes in violation of 18 U.S.C. §§ 2423(a) and 2(b) (Counts 2, 6, 7, 8 and 11); and on two counts of knowingly transporting individuals from Vermont to New York for prostitution purposes in violation of 18 U.S.C. § 2421 (Counts 3 and 9).

2. In a Supplemental Brief filed on July 23, 2004, Holland claims that her sentence violates *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We reject this challenge under *United States v. Mincey,* 380 F.3d 102, 106 (2d Cir.2004), which held that "[u]nless and until the Supreme Court rules otherwise, the law in this Circuit remains" that the federal Sentencing Guidelines are constitutional.

3. In our review of Holland's assertions on appeal, we note from the outset that the jury convicted her on eight counts. Because we are now asked to review those convictions and various decisions of the district court

young women in Vermont, some of them minors, to travel to New York in order to become prostitutes.[4] When necessary, Holland falsely represented the purpose of the trips to the women's mothers and assured them of their daughters' safety and well-being. The trips to New York were usually by bus, although sometimes one of Holland's male accomplices drove the females to Holland's Bronx apartment. Once in New York, Holland instructed the women in prostitution, brought them to productive business sites, and monitored them while they solicited customers. On occasion, Holland also arranged for the women to meet customers in apartments. Holland persuaded reluctant women to follow her instructions by telling them that the only way to earn a bus ticket back to Vermont was to work as a prostitute. Holland used the street name "Candy," and called the women she recruited and monitored "Candy's Girls," a term used on Holland's business cards. The phone number on the cards was that of her Bronx apartment.

After initiation as "Candy's Girls," some of the women, namely Judy, Melissa and Lindsay, helped to recruit new prostitutes by putting other young girls in touch with Holland. Also, some of "Candy's Girls," namely, Judy, Sandra, Colleen, and Angel, went to work for a New York-based pimp, Jose Rodriguez, who was also running a Vermont–New York operation.

At trial Holland sought to introduce as evidence the indictment, plea agreement, and judgment from the case against Rodriguez, *United States v. Rodriguez*, No. 2:01–CR–37–01 (D.Vt). Rodriguez had

pled guilty to Mann Act violations involving the transportation of Vermont women to New York, including some ex-"Candy's Girls." Holland argued that the filings in *Rodriguez* were relevant to show that the testimony of those women against Holland was false because the women were lying to protect Rodriguez. The district court excluded the evidence.

At the conclusion of the evidence, Holland sought judgments of acquittal under Fed.R.Crim.P. 29. She argued that because Counts 2, 9, and 11 involved Holland's transportation of women who had helped her recruit others, the women were "coconspirators" and, therefore, their transportation could not serve as the basis of a Mann Act violation. Holland also requested a jury charge to that effect. The district court denied the motion and rejected the requested charge on the grounds that it makes no difference under the Mann Act whether the individual transported is a coconspirator or not or, alternatively, that the pertinent counts were based on events that pre-dated the recruitment efforts that arguably transformed them into coconspirators. Holland also unsuccessfully sought acquittals on Counts 3 and 9 on the ground that the evidence that she "transport[ed]" the females—namely her buying bus tickets and accompanying them—was insufficient under Section 2421 of the Mann Act to sustain a conviction. *See* 18 U.S.C. § 2421. Finally, Holland moved for, and was denied, an acquittal on Counts 7 and 8. As to those, she asserted that the evidence was insufficient as a matter of law to show she

during the trial, we view the evidence in the light most favorable to the government. *See e.g., Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

4. The women were identified by first name only at trial and in the public filings, although

their full names and dates of birth were set forth and sealed in a "Bill of Particulars," which was provided to the jury. We will use the format used at trial and refer to the females by their first names only.

"caused" a violation of Section 2423(a). *See* 18 U.S.C. §§ 2423(a), 2(b).

The district court dismissed two of the counts for reasons unrelated to this appeal, and the jury found Holland guilty on eight counts and not guilty on one. The district court sentenced Holland to a total of 235 months' imprisonment and two years of supervised release, and imposed an $800 assessment.

## DISCUSSION

### a) *The Jury Charge*

 The first issue concerns Counts 2, 9, and 11. As to them, the district court denied Holland a jury instruction that the interstate transportation of coconspirators cannot serve as the basis of a Mann Act conviction. We review jury charges *de novo*. *United States v. Han*, 230 F.3d 560, 565 (2d Cir.2000). "A conviction will not be overturned for refusal to give a requested charge ... unless that [requested] instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *Id.* (internal quotation marks omitted, alterations in original). Because Holland's requested jury charge is legally meritless, we need not decide whether it had an evidentiary basis in the record.

"The starting point for [the] interpretation of a statute is always its language." *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Holland's argument concerns counts charged under Sections 2421 and 2423 of the Mann Act. Section 2421 relates to the interstate transportation of adult individuals, and provides that "[w]hoever knowingly transports *any individual* in interstate ... commerce" for prohibited purposes shall be found guilty under the Act. 18 U.S.C. § 2421 (2002) (emphasis added). Section 2423 relates to the interstate transportation of minors, and provides that whoever "knowingly transports *an individual who has not attained the age of 18 years* in interstate ... commerce" for prohibited purposes shall be found guilty. 18 U.S.C. § 2423(a) (2002) (emphasis added). This language makes no distinction between victims and coconspirators for purposes of imposing liability on the person who transports another; the defendant need only have transported an "individual," either adult or minor depending on the relevant section, to be guilty under the Act.

 Holland is correct that the Mann Act distinguishes between victims and coconspirators, but it does so only for purposes of determining the liability of the person who is transported interstate—i.e., the victim. It is the Mann Act's "affirmative legislative policy to leave [the victim's] acquiescence unpunished," *Gebardi v. United States*, 287 U.S. 112, 123, 53 S.Ct. 35, 77 L.Ed. 206 (1932). The Act does not punish "women who do no more than consent to being transported across state lines for the purpose of prostitution." *United States v. Footman*, 215 F.3d 145, 151 (1st Cir.2000).[5] Holland cannot use this dis-

---

5. Holland relies on *Footman* to support her theory, but that case distinguished between victims and coconspirators only to determine whether the defendant pimp's female partner was a coconspirator or merely a victim in the defendant's interstate prostitution enterprise. *See Footman*, 215 F.3d at 151 ("The real question is whether the jury had adequate evidence to conclude that Tes was more than a victim—that she was in fact a co-conspirator."). *Footman* upheld the defendant pimp's conspiracy conviction on the finding that the woman in question was not a pawn but a coconspirator because she had "acted on [the defendant's] behalf as transporter of the women, arranger of the details of the business, occasional money handler, and enforcer." *Id.* at 152. *Footman* nowhere suggests that

tinction to shield her from liability. The distinction between Mann Act coconspirators and those who consent to their transportation was designed to protect pawns in an interstate transportation ring, not the entrepreneurs, like Holland, who operate it.

Accordingly, the district court's refusal to give Holland's requested jury charge was entirely proper.

### b) *Exclusion of the Rodriguez Filings*

 Holland next argues that it was error for the district court to exclude from evidence the indictment, plea agreement and judgment in the Mann Act prosecution of Rodriguez. He was a New York-based pimp who, like Holland, ran a Vermont–New York prostitution ring. The district court rejected the proffered evidence on the grounds that the evidence was irrelevant, Fed.R.Evid. 401, and that, alternatively, even if it had evidentiary value, that value was substantially outweighed by its prejudicial impact, Fed.R.Evid. 403. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Jackson*, 335 F.3d 170, 176 (2d Cir.2003).

" 'Relevant evidence' " is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Holland argues that because Rodriguez operated a Vermont–New York prostitution ring during some of the same time that she operated her ring, the evidence would tend to show that women alleged to have been involved in both rings either lied in their testimony against Holland to protect Rodriguez or were confused about who had transported them on particular occasions. At trial, Judy, Sandra, Colleen, and Angel testified for the government that Holland had transported them from Vermont and had introduced them into prostitution. They also testified that a time came when they stopped working for Holland and thereafter worked in Rodriguez's prostitution ring.

The proffered evidence from the *Rodriguez* prosecution does not tend to undercut the women's testimony against Holland. The women admitted that they had worked for Rodriguez, albeit after their stints with Holland, and the district judge invited cross-examination as to the circumstances of the various employments, which was undertaken without any testimonial profit to Holland.[6]

The proffered filings from Rodriguez's prosecution would have added nothing to Holland's efforts to discredit the women's testimony. The filings do not even include the names of the women transported and recite only in conclusory terms that Rodriguez operated an interstate prostitution ring during a portion of the time in which Holland did the same—an undisputed fact known to the jury. Thus, while a showing that the women had a proclivity to lie or were confused about the various trips would have been material to Holland's case, the filings from the *Rodriguez* prosecution would have added nothing to the evidence concerning those issues.

---

classification of the particular woman as a coconspirator would have somehow insulated the defendant from Mann Act charges of transporting her interstate for the purpose of prostitution.

**6.** During Angel's testimony the court ruled that the defense could examine Angel on her association with Rodriguez. The court stated: "I think this is a fertile area for cross-examination for impeachment purposes," and stated directly to defense counsel: "I'm going to give you some leeway." Colleen, Judy and Sandra were also cross-examined on their relationships with Rodriguez.

If anything, the filings would tend to disprove Holland's assertion that the government witnesses were lying or confused. The filings would have shown that the sentence was entered in the *Rodriguez* case on June 3, 2002, three months before Holland's trial, a sequence of events that undermines any claim that the women were lying to protect Rodriguez. Moreover, the women's testimony against Holland was that they were transported by Holland before the times alleged in transportation counts to which Rodriguez pled guilty. The filings in *Rodriguez* were therefore consistent with the testimony of the women and would have bolstered their versions of events against a claim of confusion.

c) *Denial of the Motions for Judgments of Acquittal*

■ Holland argues that the district court erred in denying her Rule 29 motions for judgments of acquittal with regard to Counts 3 and 9, and Counts 7 and 8.[7] (Subsection (a) of the DISCUSSION portion disposes of the arguments based on her Rule 29 motion with regard to Counts 2, 9, and 11.) We review the denial of a judgment of acquittal de novo. *United States v. Reyes*, 302 F.3d 48, 52–53 (2d Cir.2002).

■ Her challenge to Counts 3 and 9 is essentially a legal claim as to the meaning of the Mann Act. Those counts implicate Section 2421 of the Mann Act, which provides:

Whoever knowingly transports any individual in interstate or foreign commerce ... with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421 (2002). A defendant will be deemed to have "transport[ed]" an individual under Section 2421 where the evidence shows that "the defendant personally or through an agent performed the proscribed act of transporting," *United States v. Sabatino*, 943 F.2d 94, 99 n. 2 (1st Cir.1991) (citing *United States v. Jones*, 909 F.2d 533, 540 (D.C.Cir.1990)), as opposed to situations where the victim " 'travels' under her own steam, without need of anyone to 'transport' her." *Jones*, 909 F.2d at 540. Count 3 concerned the interstate transport of Jen, while Count 9 concerned the interstate transports of Erin and Melissa. The evidence at trial was that Holland bought bus tickets from Vermont to New York for the women and accompanied them on these trips.

■ Holland somewhat heroically contends that the acts of recruiting the women, persuading them to travel, purchasing the bus tickets, and accompanying them on the journey does not constitute "transport[ing]" them within the meaning of Section 2421. Rather, she argues that her convictions cannot be sustained absent evidence that she physically drove the women herself. We cannot agree with the proposition that an operator of a prostitution

---

**7.** The government argues that Holland did not preserve for appeal her objections concerning Count 11 and Count 7—the interstate transport of Colleen. Brief for Appellee at 35 nn. 29, 30. However, challenges to these counts were expressly raised in Holland's Rule 29 motion, and we therefore consider them preserved for review. *See United States v. Allen*, 127 F.3d 260, 264 (2d Cir.1997) ("To preserve the sufficiency issue and avoid the burden of showing plain error, a defendant must have moved for judgment of acquittal either at the close of all the evidence pursuant to Rule 29(a) or post-trial in a motion pursuant to Rule 29(c).").

ring may escape liability by accepting a bus company's offer to "Leave the Driving to Us." [8] Inviting travel, purchasing tickets, and accompanying individuals on trips is more than sufficient to establish that a defendant "transport[ed]" the individuals within the meaning of Section 2421. *See United States v. Taylor*, 239 F.3d 994, 996–97 (9th Cir.2001) (upholding a conviction under Section 2423(a) which relates to transporting minors and has identical "knowingly transport" language to Section 2421 where defendant purchased airline tickets for minor and traveled on airplane with her). The word "transport" is not strained by including those who purchase the means of transportation and accompany the person in question even though they do not physically drive the bus, operate the locomotive, pilot the airplane, or captain the vessel.

We turn now to the denials of Rule 29 motions on Counts 7 and 8, which charged Holland under Section 2423(a) of the Mann Act and Section 2(b) with knowingly transporting a minor, Colleen, interstate for the purpose of prostitution in August and September of 2000. Under Section 2(b), "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2. At trial, Colleen testified that before traveling to New York she had met with Holland at Holland's Burlington apartment and Holland had "asked if I would go to New York with her." Colleen testified that thereafter she made multiple trips from Vermont to New York, each of them with Holland, and that specific trips took place in August and September.

Government: Colleen, is it correct you made several trips to New York?

Witness: Yes.

Government: Each of those trips were with—the ones I'm talking about, in early 2000, with Beverly?

Witness: Yes.

\* \* \*

Government: Did you go down to New York with Holland in August and September also?

Witness: Yes.

Colleen also testified that she stayed in Holland's Bronx apartment during the trips, routinely traveled with Holland to appropriate sites and prostituted herself under Holland's guidance while Holland collected the fees. Colleen's testimony as to the timing of her August and September trips with Holland was also corroborated by phone records showing multiple calls to her mother from Holland's Bronx apartment and other Bronx phones. Colleen did not, however, testify as to who paid for the bus tickets. Holland argues that the evidence is legally insufficient to support her conviction under Section 2423(a) of the Mann Act and Section 2(b).

Section 2423(a) of the Mann Act provides:

A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce ... with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this

---

**8.** This slogan has long been associated with Greyhound Lines. *See, e.g., Krasowski v. Greyhound Lines, Inc.*, 19 Ohio Misc. 179, 402 F.2d 445, 447 (6th Cir.1968) (including a quotation of the district court that "[t]here is an axiom, 'Leave the driving to us' "); *see also* http://www.greyhound.com/touram/west-coast/services/index.shtml (July 22, 2004) ("Sit back, relax and leave the driving to us.").

title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2423(a) (2002). We do not decide whether Holland's acts with regard to Colleen's trips, without evidence of buying the bus tickets, were sufficient to support a conviction under Section 2423(a) alone, because the evidence was easily sufficient to support Section 2(b) liability.

 Section 2(b) "allows a conviction ... even when the defendant was not present or did not personally commit all of the requisite acts establishing the offense." *Sabatino*, 943 F.2d at 99. It is a "generic statute [that] 'removes all doubt' that one who sets an illegal course in motion but intentionally refrains from 'the direct act constituting the completed offense' shall not escape punishment." *Id.* (citing H.R.Rep. No. 304, 80th Cong., 1st Sess. A5 (1947)); *Jones*, 909 F.2d at 540–41. Under Section 2(b), it would be enough for the government to have shown that Holland "caused" the transportation of Colleen. *See United States v. Johnson*, 132 F.3d 1279, 1284–86 (9th Cir.1997); *Jones*, 909 F.2d at 540–41; *Sabatino*, 943 F.2d at 99.

 "A district court can enter a judgment of acquittal on the grounds of insufficient evidence only if, after viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, it concludes no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *See Reyes*, 302 F.3d at 52.

In *Johnson*, the Ninth Circuit upheld a Section 2423(a) conviction based on Section 2(b) despite the undisputed absence of evidence that the defendant had done anything with regard to the physical means of transportation. 132 F.3d at 1281. In that case, the defendant merely contacted an Education Foundation to volunteer his home as part of a student exchange program, with the Foundation and the minor arranging for the transport. *Id.* Nevertheless, the court held that "it is enough [under Sections 2423(a) and 2(b)] that Johnson caused the Norwegian minor's transport and possessed the requisite intent to engage in unlawful sexual conduct even if the entity carrying out the transport—be it the Education Foundation or the minor himself—lacked criminal intent." *Id.* at 1285.

We need not go so far to affirm in the present case. Unlike the defendant in *Johnson*, Holland played an active and dominant role in causing Colleen's physical acts of transportation. Colleen was specifically recruited by Holland, traveled to New York under Holland's direction as leader of the ring, and was accompanied by Holland on the particular trips—Colleen testified to "go[ing] down to New York with Holland in August and September." Holland also facilitated the trips by providing housing in the Bronx apartment at the end of each journey. This evidence was easily sufficient to support a conviction under Sections 2423(a) and 2(b).

## CONCLUSION

The judgment of the district court is affirmed. The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker*, No. 04–104 (to be argued October 4, 2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker*. In that regard, the parties

will have until fourteen days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker*.