UNITED STATES of America,
Plaintiff-Appellee,

v.

Silas JONES, Defendant-Appellant.

No. 79–5579.

United States Court of Appeals,
Fifth Circuit.

April 17, 1981.

C. Larry Cain, Sherman, Tex., for defendant-appellant.

T. J. Baynham, Jr., Asst. U. S. Atty., Tyler, Tex., for plaintiff-appellee.

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

HENDERSON, Circuit Judge.

Silas Jones was convicted of conspiracy, 18 U.S.C. § 371 (1948) and a violation

of 18 U.S.C. § 1952(a)(3) (1970).[1] He is alleged to have travelled from Oklahoma to Texas to cash checks received in payment of gambling debts incurred at the Black Garter Club in Cartwright, Oklahoma. On appeal, Jones contends that the court erred in failing to grant his motions to dismiss the indictment and for judgment of acquittal and in entering a judgment of conviction because the indictment does not allege and the evidence does not prove use of interstate facilities to further an unlawful gambling enterprise.[2] He further charges that the district judge, to his prejudice, changed the jury instructions without notice.

In considering this evidence, we do so with the view toward the scope of our authority on appeal. We must uphold the denial of a judgment of acquittal if satisfied that a reasonable jury, viewing the evidence most favorably to the government, could have concluded that the circumstantial evidence was consistent with guilt and inconsistent with all reasonable hypotheses of innocence. *United States v. Marable*, 574 F.2d 224 (5th Cir. 1978). With that standard in mind, we review the facts at hand.

The drawer of the checks, Dan Edwards, was a resident of Tom Bean, Texas, who visited the Black Garter Club several times in April, 1977. Edwards had stopped at the bar on April 12, 1977, and almost immediately entered a poker game forming in the back of the club. The unlucky Edwards was quickly stripped of $1,000.00 by his playing companions, one of whom Edwards was told was Silas Jones. In settlement of his debts, Edwards drafted two checks, one for $1,000.00 and one for $100.00, payable in blank. He delivered the checks to the men later identified as Jones. He was, however, unable to identify the appellant as the person with whom he played cards that evening.[3]

The next day Jones drove to Tom Bean, Texas from Cartwright, Oklahoma and attempted to cash Edwards' checks. The teller at the local bank paid the $100.00 check as endorsed by the appellant. The $1,000.00 check failed to clear, however, because Edwards' account lacked sufficient funds to cover the draft.

Later the same evening Edwards returned to the Black Garter Club to resume gambling. His luck was no better than the night before. On this occasion he accounted for his poker losses with three checks in the amounts of $1,000.00, $500.00 and $300.00 made out in blank. Accompanying Edwards to his home in Texas that night was Kenny Ross Andrews, an employee of the Black Garter Club and participant in the poker game. Andrews had in his possession the three checks received from Edwards by the club that evening and the $1,000.00 check made out to Silas Jones as payee, which Jones had attempted to cash earlier. When the two men arrived in Tom Bean, Edwards went into his house and left Andrews asleep in the car until morning, at which time Andrews accompanied Edwards

---

1. The statute reads in pertinent part:

 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

 . . . . .

 (3) otherwise, promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

 and thereafter performs or attempts to perform any of the acts specified in [subparagraph] ... (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

 (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling. . . .

18 U.S.C. § 1952 (1970).

2. Subsequent to moving for acquittal the defendant, the appellant, introduced additional evidence. His right to appeal the denial of that motion, however, was preserved by his renewal of the motion at the close of all the evidence. *United States v. Siegel*, 587 F.2d 721 (5th Cir. 1979).

3. Jones was positively identified as a participant in the April 12, 1977 game by government witness Gene Eldon Wiggins. Wiggins, himself a professional gambler, said Edwards, Jones and two other men had been dealt hands of cards that night. *See* Record at 193.

to the bank for the purpose of cashing the checks. ·As the pair was leaving the bank after an unsuccessful attempt to redeem the checks, the city marshal of Tom Bean observed a gun carried by Andrews. Andrews was arrested and the checks were discovered on his person.

Andrews posted bond within hours and returned to Cartwright, Oklahoma. Upon his arrival he was directed by Jones to accompany Gene Eldon Wiggins, a professional gambler, back to Edwards' home in a second attempt to collect on the gambling debts. The two men met Edwards once again in Tom Bean on April 15, 1977. During the time they were at Edwards' home, Wiggins reportedly called Jones to discuss the payment from Edwards and to receive further directions. Edwards then paid Andrews and Wiggins $2,800.00 in cash and obtained receipts therefor from the two men. As Andrews and Wiggins were returning to Oklahoma, they were arrested by federal and state authorities. Neither the men nor the money had yet crossed the Oklahoma state line. Jones was arrested thereafter.

The owner of the Black Garter Club, Isabel "Sam" Smith, was a woman with whom Jones had had a long liaison. Smith filed the monthly sales tax reports for the club and obtained financing for improvements on the premises. Both Smith and Andrews stated on direct examination that Jones took no part in the operation of the saloon, but patrons testified that Jones appeared to exercise some management authority.

On September 12, 1979, after the defense motion for judgment of acquittal was overruled, the case went to the jury. By their verdict, the jurors found that Jones engaged in the "unlawful activity" of running a "business enterprise involving gambling". Because the jury believed that Jones had facilitated this unlawful activity by traveling from Oklahoma to Texas to cash the checks and collect his winnings, it found him guilty on the 18 U.S.C. § 1952 count. The conspiracy conviction rested on the agreement between Jones, Andrews and Wiggins to undertake the second collection attempt. On appeal, we affirm the judgment of the district court entered pursuant to the jury's verdict.

## THE § 1952 VIOLATION

As his primary contention, the appellant argues that § 1952 requires proof of an unlawful activity in the state of destination subsequent to the interstate travel. Moreover, he maintains that the travel must be necessary to facilitate the commission of the unlawful act. In light of the present facts, the appellant would have us hold that his conviction for conducting an illegal interstate gambling activity be reversed for lack of evidence and insufficiency of the indictment.

Section 1952 reaches anyone who travels interstate or uses an interstate facility with intent to facilitate an unlawful activity and thereafter actually performs or attempts to perform an act in aid thereof.[4] The travel and the act must be in furtherance of an unlawful activity. For gambling to constitute an unlawful activity under § 1952, it must be conducted as part of an ongoing business enterprise. *Spinelli v. United States*, 382 F.2d 871, 889 (1967) *rev'd.* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); 18 U.S.C. § 1952(b) (1970). Thus, the offense is such that, by definition, proof of illegal acts occurring after the interstate travel must be shown. *See United States v. Eisner*, 533 F.2d 987, 992–93 (6th Cir.) *cert. denied* 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *United States v. LeFaivre*, 507 F.2d 1288, 1293 (4th Cir. 1974), *cert. denied* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). The ongoing illegal activity to which the words "there-

---

4. The Senate report on the Travel Act bill states:

"... to come within the provisions of the bill some activity in furtherance of a racketeering enterprise, subsequent to the performance of the travel, must take place ... accordingly the gravamen of the offense will be travel and a further overt act to aid the enterprise." S.Rep.No.644, 87th Cong., 1st Sess. 1961, p. 2. *See United States v. Zizzo*, 338 F.2d 577, 579–80 (7th Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965).

after" and "facilitate" refer can be proved by evidence of gambling after the last date charged in the indictment. *Hanley v. United States*, 416 F.2d 1160, 1163 (5th Cir. 1969), *cert. denied* 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970). In the instant case, testimony established the existence of gambling at the Black Garter Club as early as 1975 and continuing through April, 1977, some days after Jones drove to Tom Bean, Texas. It is important to note that the unlawful activity was the organized gambling;[5] the Black Garter Club itself was not the unlawful enterprise for which Jones was convicted. Accordingly, the fact that Jones' girlfriend was the actual owner of the club did not preclude Jones' conviction.

■ Case law defining the requisite "thereafter" acts is in disarray. However, the courts have apparently reasoned that the facilitating act in the other state need not be unlawful itself. As long as the interstate travel or use of the interstate facilities and the subsequent facilitating act make the unlawful activity easier, the jurisdictional requisites under § 1952 are complete. In so holding, we rely on *United States v. Perrin*, 580 F.2d 730 (5th Cir. 1978) *aff'd* 444 U.S. 37, 100 S.Ct. 199, 62 L.Ed.2d 199 (1979) in which the interstate activities included ordering gravity maps by telephone from Louisiana to Texas. Clearly, no illegal conduct took place in Texas, the state of destination. But because the commercial bribery scheme in Louisiana was furthered, the § 1952 requirement was met. *See also United States v. Vitich*, 357 F.Supp. 102 (W.D.Wis.1973) (use of a Minnesota laundry supply service by a Wisconsin house of prostitution was interstate activity within § 1952). Thus, we do not accept the appellant's contention that the subsequent facilitating conduct must be illegal, much less illegal in the state of destination.[6]

■ In response to appellant's argument that Jones' trip from Oklahoma to Texas to cash the wagering checks was too incidental to the ongoing gambling enterprise to satisfy the "facilitation" requirement of § 1952's interstate travel element, we call attention to *United States v. Altobella*, 442 F.2d 310, 315 (7th Cir. 1971) in which the court said "[u]nquestionably, the distribution of proceeds of criminal activity may satisfy the 'thereafter' requirement of the statute in a proper case." Attempts to gather the wagered funds which involve the use of interstate facilities can be an essential part of the gambling enterprise.[7] This is a strong case of interstate involvement facilitating the collection of the gambling proceeds. Evidently, Jones could not cash the check locally, but instead was forced to drive to Tom Bean, Texas, to collect his funds. Only by traveling interstate could Jones realize the illegal profits.

## THE CONSPIRACY VIOLATION

■ Jones' conviction for conspiracy to facilitate unlawful gambling activity in violation of 18 U.S.C. § 371 arises from the second check-cashing episode. The government charges that Jones conspired with Andrews and Wiggins to further the interstate collection efforts attempted by the pair on April 15, 1977. Three grounds were urged by Jones in the district court and on appeal challenging the alleged sufficiency of the evidence and the indictment. He maintains

5. A prosecution under § 1952 is not restricted to state law definitions of the unlawful activity. It can prevail upon showing that the acts fall within the generic term charged. *United States v. Prince*, 515 F.2d 564, 566 (5th Cir. 1975); *United States v. Conway*, 507 F.2d 1047 (5th Cir. 1975). Here the gambling at the Black Garter Club not only meets the generic test but also violated a state law. Okla.Crim.Stat. 21:941.

6. Although it seems clear in this circuit that the "thereafter" act need not be illegal in and of itself in the destination state, there is some precedent to the contrary in another circuit. *See, e. g. United States v. Zemater*, 501 F.2d 540 (7th Cir. 1974).

7. In *Altobella* however, the court dismissed for lack of jurisdiction on grounds that the travel of a gambling check through interstate mails from the payee's bank to the maker's bank was too tenuously related to interstate commerce to fall within the policy of the statute.

that the government failed to prove either an agreement, purpose to commit an illegal act, or illegal overt acts in furtherance thereof.

The essence of the inchoate crime of conspiracy is an agreement; the agreement itself is the illegal act. Rarely, however, do conspirators join in "open covenants openly arrived at." *Lacaze v. United States*, 391 F.2d 516, 520 (5th Cir. 1968), *vacated and aff'd* 457 F.2d 1075 (5th Cir. 1972). Rather, the element of agreement is generally established through circumstantial evidence that there was an understanding to which the defendant was a party and which he intended to join. *United States v. Suarez*, 608 F.2d 584, 586–87 (5th Cir. 1979). Jones' participation can be deduced from the fact that his check was in the possession of Andrews and Wiggins, the two Black Garter Club employees and he had made a similar collection attempt with respect to the same debt. His personal interest in the venture was clearly demonstrated by his stake in its outcome; proceeds from the once-refused check payable to him might be recovered. *See United States v. Falcone*, 109 F.2d 579 (2d Cir.), *aff'd* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). Furthermore, Andrews' testimony denying an agreement was convincingly impeached.[8] While each of these indicia alone may support different conclusions, when taken together the evidence unmistakably points to an agreement.

 We are equally convinced that the requisite intent and purpose was possessed by Jones. "Community of unlawful intent" is a phrase used in this circuit to describe the conspiratorial mentality. *Unit-*

ed States v. Bright, 630 F.2d 804, 813 (5th Cir. 1980). The conspirator must intentionally agree to join others in a concerted effort to achieve an illegal act. *United States v. Perez*, 489 F.2d 51 (5th Cir. 1973), *cert. denied* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974); *United States v. Morado*, 454 F.2d 167 (5th Cir.) *cert. denied* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972). The illegality of the actions taken by Andrews and Wiggins is evident in light of the precedent cited above with respect to Jones' conduct. Whether the three men actually intended to act illegally is not important. Even if the conspirators were unaware that the plan to "cash checks" was illegal, their intent to agree on the acts and their intent to complete the acts will render them liable. Mistake of law is no defense to the underlying crime or the conspiracy charge. *United States v. Manning*, 509 F.2d 1230, 1234 (9th Cir. 1974), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975).

 Finally, the appellant erroneously contends that the overt act in furtherance of the conspiracy must be illegal. An act innocent in nature and of no danger to the victim or society can suffice if it furthers the criminal venture. *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978); *United States v. Winter*, 509 F.2d 975, 982 (5th Cir.), *cert. denied, Parks v. U. S.*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

Taking all evidence in the light most favorable to the government, yet recognizing at the same time our duty to uphold the jury verdict if supported by fact, we conclude that neither the indictment as drawn

---

8. On direct examination, a government probation officer testified to a conversation with Andrews during a presentence investigation. The officer stated that Andrews admitted he and Wiggins had made a telephone call to Jones for further direction while in Edwards' home in Texas. This evidence, although hearsay, was not objected to. Thereafter when Andrews came to the stand, he denied the existence of an agreement with Jones and Wiggins to press Edwards for payment. To impeach this denial, the government introduced prior inconsistent statements by Andrews recorded in Andrews' Pre-Sentence report. The probation officer's statements were in complete accord with Andrews' account as it appeared in the report. Andrews had stated that he was acting under Jones' direction and that Wiggins, his traveling companion, had called Jones from Texas for further instructions. *See* Record at 296–97, 505–08. While the report was admissible only for the purpose of impeachment, the similarity of its contents to the substantive testimony of the probation officer make corroborative effect difficult to ignore. Evidence of the phone call goes a long way toward establishing the existence of a conspiracy.

nor the evidence admitted was insufficient to support a charge of conspiracy to facilitate an illegal gambling activity.

## THE JURY INSTRUCTIONS

█ Failure to give requested jury instructions is reversible error only if the defendant can show that the requested charge was correct and that the contents of the requested instructions were not substantially delivered by the trial court. *United States v. L'Hoste*, 609 F.2d 796, 805 (5th Cir. 1980) *cert. denied*, —— U.S. ——, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980); *United States v. Hitsman*, 604 F.2d 443, 446 (5th Cir. 1979). The trial judge is under no duty to given inaccurate or cumulative instructions. As requested, the instructions read:

"The travel must be for the purpose of facilitating illegal conduct at the destination, not the inception of the journey."

The omission of this phrase did not result in substantial prejudice to Jones.

█ The deleted sentence suffers from ambiguity which could render it incorrect. On the one hand, it may mean the crime requires proof of illegal activity in the state of destination. Conversely, it could be read to refer to facilitation of illegal conduct elsewhere with an act that is legal in the state of destination. Under the first reading, the instruction is erroneous, because, as discussed earlier, precedent establishes that the "thereafter" act need not be in violation of the law. The trial judge acted properly when he declined to give a requested instruction that misstates the law.

█ A cumulative charge may also be stricken. Accordingly, adequacy of an instruction must be viewed in light of the charge in its entirety. *United States v. Brooks*, 611 F.2d 614, 619 (5th Cir. 1980). In essence, the omitted portion of the requested charge was useful to make one legitimate point only—that the interstate travel must preface an act of furtherance in the state of destination. This statement of the law was variously drawn in numerous other paragraphs of the judge's charge. For example, the court stated:

[Y]ou must find beyond a reasonable doubt that Defendant in addition to violating the above statute, facilitated the commission of an unlawful conduct after traveling in interstate commerce.

It added:

[E]lements which must be proved [are] . . . that the defendant engaged in travel with the specific intent to promote an unlawful activity . . . and the defendant thereafter . . . committed an act.

We find that the jury instructions given fairly and adequately address the issues presented. Failure to give an instruction that is covered adequately elsewhere in the charge is not reversible error.

█ The appellant claims, however, that the purported error lies not only in the refusal to instruct but in the failure to inform counsel of that decision prior to closing argument. Apparently, the disclosure was made to counsel for the appellee and to the appellant's co-counsel, but not to the attorney who made the closing argument. This omission was arguably a violation of F.R.Cr.P. 30 which requires the court to inform counsel of its action on requested instructions prior to argument to the jury. We cannot charge the judge with an attorney's neglect in not relaying the judge's decision to his co-counsel. Moreover, we are of the opinion that the "substantial compliance" with Rule 30 negated prejudice to either party and the error, if any, was harmless without affecting substantial rights of the defendant. *United States v. Mendoza*, 473 F.2d 697, 701 (5th Cir. 1973).

The judgment of the district court is AFFIRMED.