**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZALDY ARQUITOLA MYERS, *Petitioner*, v. JEFFERSON B. SESSIONS III, Attorney General, *Respondent.* | No. 17-71416 Agency No. A058-396-838 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 10, 2018
San Francisco, California

Filed September 25, 2018

Before: Kim McLane Wardlaw and Richard R. Clifton,
Circuit Judges, and Gary S. Katzmann,* Judge.

Opinion by Judge Clifton

---

* The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied in part and granted in part Zaldy Arquitola Myers's petition for review of a decision of the Board of Immigration Appeals that found him removable for a controlled substance offense and ineligible for cancellation of removal, holding that: 1) the Travel Act, 18 U.S.C. § 1952(a)(3), is divisible; 2) Myers's conviction under the Travel Act qualifies as a controlled substance offense; and 3) substantial evidence did not support the agency's denial of cancellation of removal, and remanded.

BIA concluded that Myers was removable for having been convicted of a controlled substance offense based on his conviction under the Travel Act, which makes it a crime to travel in interstate or foreign commerce with intent, among other things, to "promote, manage, establish, carry on, or facilitate . . . unlawful activity." 18 U.S.C. § 1952(a)(3). The unlawful activity facilitated by Myers was identified as possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

To determine whether Myers's conviction was a controlled substance offense under the Immigration & Nationality Act, the panel employed the three-step process articulated by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, 570 U.S. 254 (2013). First, the panel noted that in this case it was

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

agreed that the Travel Act is not a categorical match for a federal controlled substance offense.

Second, the panel considered whether the Travel Act is divisible with respect to the "unlawful activity" with which a defendant is charged.  The panel observed that the question was whether the "unlawful activity" is an element of the offense, meaning: whether it is necessary to identify a specific unlawful act to obtain a conviction under the Travel Act, or whether it would be sufficient to conclude that the defendant committed one or more of the crimes listed in the statute without specifying or reaching agreement on which crime.  Looking to the law of the Fifth Circuit (in which Myers was convicted), the panel concluded that it appears from the Fifth Circuit cases that the specification of the "unlawful activity" is treated as an element for a Travel Act conviction and that, therefore, the statute is divisible.

Third, applying the modified categorical approach, the panel concluded that Myers's conviction was for a controlled substance offense that made him removable, explaining that the superseding information and plea agreement show that Myers pleaded guilty to 18 U.S.C. § 1952(a)(3), that the "unlawful activity" was possession with intent to distribute methamphetamine, and that methamphetamine is a federally controlled substance.

With respect to cancellation of removal, the panel concluded that substantial evidence did not support the BIA's conclusion that Myers lacked the required seven years of presence.  A person seeking cancellation of removal must have resided in the United States continuously for seven years after having been admitted in any status, but the period is

deemed to end, among other times, when the alien is served a notice to appear.

The BIA concluded that Myers was ineligible for cancellation of removal "because the notice to appear was served upon him in January 2013," which is less than seven years after he was admitted to the United States in September 2006. However, the panel noted that the immigration judge did not make any finding regarding when the notice was served on Myers, but simply stated that Myers was "placed into proceedings on January 3, 2013."

Myers contended that he was not served with the notice until October 30, 2015, a date more than seven years after his admission. The Government acknowledged that the notice to appear was unclear, but contended that the dates were irrelevant because Myers's continuous presence ended when he violated the Travel Act in 2011 and, as a result, any error was harmless. The panel rejected Government's argument because the BIA did not make any such determination, concluding that the case must therefore be remanded to determine whether Myers is eligible for cancellation of removal.

**COUNSEL**

Kelsey Gasseling (argued) and Andrew Snow (argued), Certified Law Students; Kari Hong (argued), Supervising Attorney; Ninth Circuit Appellate Project, Boston College Law School, Newton, Massachusetts; for Petitioner.

Sarah A. Byrd (argued) and Karen L. Melnik, Trial Attorneys, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

CLIFTON, Circuit Judge:

Zaldy Arquitola Myers petitions for review of an order of removal. The Board of Immigration Appeals ("BIA") concluded that Myers is removable based on his felony conviction under the Travel Act, 18 U.S.C. § 1952(a)(3), for traveling in interstate commerce to facilitate an unlawful activity. The unlawful activity facilitated by Myers was identified as "possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)." The BIA held that Myers is removable under 8 U.S.C. § 1227(a)(2)(B)(i) because he had been convicted of a controlled substance offense. Myers challenges that conclusion. Although not all convictions under the Travel Act represent violations related to controlled substances, meaning that the statute is not a categorical match to the removal statute, we conclude that the Travel Act is divisible in that respect. We further conclude that Myers's conviction qualifies as a controlled substance offense under the modified

categorical approach.  As to that issue, we deny the petition for review.

Myers also sought relief in the form of cancellation of removal under 8 U.S.C. § 1229b.  The BIA concluded that Myers is ineligible for that relief because he had not been present in the United States prior to the initiation of the removal proceedings against him for the number of years required under the statute.  That conclusion was not supported by substantial evidence.  The statute states that the relevant time period ends "when the alien is served a notice to appear."  8 U.S.C. § 1229b(d)(1).  The BIA used the date on which the notice to appear was issued, not the date when it was served on Myers.  As a result, we grant the petition for review as to that issue and remand to the agency for consideration of Myers's claim for cancellation of removal.

## I.  Background

Myers is a citizen of the Philippines.  He was admitted to the United States as a lawful permanent resident on September 20, 2006, when he was nineteen years old.  In 2011 Myers was convicted, following his guilty plea, of one felony count of Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 1952(a)(3).  The district court sentenced him to sixty months of incarceration.

The Government commenced removal proceedings against Myers, ultimately alleging three alternative grounds for Myers's removability.  The only ground relevant to our decision is the contention that Myers had been convicted of a controlled substance offense.  Specifically, the Government alleged that Myers was removable based on his 2011 Travel Act conviction.  The relevant subsection of the immigration

statute provides for the removal of "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i).

The Immigration Judge ("IJ") sustained that charge. In a written order filed on February 2, 2016, the IJ noted that Myers did not dispute his criminal conviction for violation of the Travel Act. The IJ held that his conviction was based on a "conspiracy to possess with intent to distribute methamphetamine" and concluded that his conviction was related to a controlled substance. The IJ thus decided that Myers was removable as charged.

Myers also sought relief before the IJ in the form of cancellation of removal. The IJ concluded that Myers is ineligible for cancellation of removal, however, as one of the requirements for relief is that the applicant must have lawfully resided in the United States for at least seven years prior to the commencement of the removal proceedings. The IJ found that Myers was admitted to the United States on September 20, 2006, but that removal proceedings started on January 3, 2013, less than seven years later. The IJ therefore ordered Myers removed to the Philippines.

Myers appealed to the BIA, which affirmed the IJ's decision on May 3, 2017. The BIA noted that it used the categorical approach to determine that Myers's conviction rendered him removable "as an alien convicted of violating any law of the United States relating to a federally controlled

substance." The BIA concluded that a conviction under the Travel Act could be analyzed under the modified categorical approach because the specific act that constituted the "unlawful activity" was an element of the Travel Act offense and that a jury was required to agree on a particular "unlawful activity" in order to find the defendant guilty. The BIA also stated that its reading of the Travel Act was supported by the superseding information to which Myers entered his guilty plea. As described by the BIA, that document specified "that he traveled in interstate commerce with the intent to promote one particular unlawful activity to the exclusion of all others, that is, possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)" (internal quotation marks omitted).

## II. Removability

Myers argues that a conviction under the Travel Act is not a controlled substance offense for purposes of 8 U.S.C. § 1227(a)(2)(B)(i). The Travel Act makes it a crime to travel in interstate or foreign commerce with intent, among other things, to "promote, manage, establish, carry on, or facilitate . . . unlawful activity." 18 U.S.C. § 1952(a)(3). The statute lists the crimes that may constitute an "unlawful activity" under the Act. 18 U.S.C. § 1952(b). It includes violations of controlled substances laws but also includes a number of crimes other than drug offenses, including gambling, extortion, and arson.[1] Because a conviction under the Travel

---

[1] Specifically, 18 U.S.C. § 1952(b) provides:

As used in this section (i) "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid,

Act does not necessarily mean a conviction for activity relating to controlled substances, Myers contends that his conviction cannot justify his removal.

To determine whether Myers's Travel Act conviction is a controlled substance offense we use the categorical approach articulated by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, 570 U.S. 254 (2013). "The *Taylor-Descamps* framework lays out a three-step process for determining whether a specific conviction is a predicate offense

---

narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title and (ii) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

Both the Travel Act and the Immigration and Naturalization Act ("INA") define "controlled substance" by reference to the federal Controlled Substances Act ("CSA"). *See* 18 U.S.C. § 1952(b) (Travel Act); 8 U.S.C. § 1227(a)(2)(B)(i) (INA). The CSA is codified at 21 U.S.C. § 802, and defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Relevant to the instant case, 21 U.S.C. § 812 Schedule II(c) and Schedule III(a)(3) concern methamphetamine.

mandating removal under the INA."**[2]** *Medina-Lara v. Holder*, 771 F.3d 1106, 1111–12 (9th Cir. 2014). First, "we ask whether the statute of conviction is a categorical match to the generic predicate offense; that is, if the statute of conviction criminalizes only as much (or less) conduct than the generic offense." *Id.* at 1112. If there is a categorical match, we do not proceed to the other steps "because the conviction categorically constitutes a predicate offense." *Id.* At step two, we ask if an overbroad statute is divisible. *Id.* If it is indivisible, we are done "because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Id.* (emphasis in *original*). If the statute is divisible we move on to step three and apply the modified categorical approach. *Id.*

## A. Divisibility of the Travel Act

In this case it is agreed that the Travel Act is not a categorical match as it also covers unlawful activity unrelated to any controlled substances. The question is whether the statute is divisible. The BIA concluded that it is. Because divisibility is a purely legal question, we review the BIA's determination de novo. *Almanza-Arenas v. Lynch*, 815 F.3d 469, 477 (9th Cir. 2016) (en banc).

Divisibility depends on whether a statute's "listed items are elements or means." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). If they are elements, the statute is

---

**[2]** Many of the cases explaining and applying the categorical approach consider the issues of sentencing and immigration. "The *Taylor-Descamps* line of cases developing and refining the categorical and modified categorical approach applies with equal force in both sentencing and immigration proceedings." *Medina-Lara*, 771 F.3d at 1112 n.12.

divisible. If the alternative phrases are means, however, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.*

"To resolve the question of whether statutory alternatives are either elements or means, a court looks first to the statute itself and then to the case law interpreting it." *Sandoval v. Sessions*, 866 F.3d 986, 993 (9th Cir. 2017). Statutory alternatives that carry different punishments are elements. *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). On the other hand, if the statutory list offers only "illustrative examples, then it includes only a crime's means of commission." *Id.* (internal quotation marks omitted).

In some cases, neither the statute nor relevant case law answers the question, and a court may then look to so-called *Shepard* documents to help determine divisibility.[3] *Sandoval*, 866 F.3d at 993; *see also Mathis*, 136 S. Ct. at 2256 ("And if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself."). A court only reviews these documents to "discover what the prosecutor included as elements of the crime and to what elements the petitioner pleaded guilty." *Almanza-Arenas*, 815 F.3d at 479.

---

[3] In *Shepard v. United States*, the Supreme Court held that "enquiry under the [Armed Career Criminal Act ("ACCA")] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. 13, 26 (2005).

### 1. Specifying an "Unlawful Activity"

Myers was convicted of violating 18 U.S.C. § 1952(a)(3) in the Northern District of Texas on August 14, 2011. Myers pleaded guilty to the charge stated in the superseding information:

> On or about the 14th day of June, 2011, in the Amarillo Division of the Northern District of Texas and elsewhere, the defendant, Zaldy Arquitola Myers, traveled in interstate commerce from the State of Arizona to the State of Texas, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of *an unlawful activity, that is, possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)*, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity.

(Emphasis added.) The plea agreement that Myers signed explicitly stated that charge was the subject of his guilty plea.

As noted above, the Travel Act lists a number of violations that qualify as unlawful acts under the statute. The question here is whether the specific "unlawful activity" with which a defendant is charged from the list in § 1952(b) is an element of the offense. Put another way, the question is whether it is necessary to identify a specific unlawful act to

obtain a conviction under the Travel Act, or whether it would be sufficient to conclude that the defendant committed one or more of the crimes listed in § 1952(b) without specifying or reaching agreement on which crime.

In the Ninth Circuit, a specific "unlawful activity" is an element of a Travel Act offense. *See United States v. Nader*, 542 F.3d 713, 715–16 (9th Cir. 2008) (explaining that the defendants violated the Travel Act by using telephones to conduct an unlawful prostitution business); *United States v. Bertman*, 686 F.2d 772, 774 (9th Cir. 1982) ("When the unlawful activity charged in the indictment is the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense.").[4]

---

[4] The same appears to be true in most of the other circuits. *See, e.g.*, *United States v. Halloran*, 821 F.3d 321, 332 (2d Cir. 2016) (stating that a Travel Act conviction "based on bribery requires an underlying violation of a federal or state bribery statute"); *United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015) (explaining that the Travel Act requires "the intent to commit a specified unlawful act"); *United States v. Driver*, 535 F.3d 424, 430 (6th Cir. 2008) ("The government alleged that the crime promoted, managed, established, carried on, or facilitated was the drug conspiracy discussed above."); *United States v. Welch*, 327 F.3d 1081, 1097 (10th Cir. 2003) (explaining that a Travel Act conviction requires a designated "unlawful activity"); *United States v. Burns*, 298 F.3d 523, 538 (6th Cir. 2002) (rejecting a challenge to a Travel Act conviction based on insufficient evidence where the record showed that the defendant committed an overt act in furtherance of a drug conspiracy); *United States v. Woodward*, 149 F.3d 46, 66 (1st Cir. 1998) (stating the elements of a Travel Act conviction and citing the Massachusetts gratuity statute as the "unlawful activity"); *see also Deptula v. Attorney Gen. of U.S.*, 642 F. App'x 184, 187–88 (3d Cir. 2016) ("Moreover, each alternative version must involve one of the specified types of 'unlawful activity' enumerated in Section 1952(b)(i).").

Myers was convicted in the Northern District of Texas, which is within the Fifth Circuit. It appears to us that the Fifth Circuit also requires the identification of a specific "unlawful activity" to support a Travel Act conviction.  *See, e.g.*, *United States v. Rodriguez-Duberney*, 326 F.3d 613, 617 (5th Cir. 2003) (holding that a district court could consider an indictment to determine if a prior offense made a defendant eligible for a sentencing enhancement because "[a] jury was required to find drug trafficking in order to convict [the defendant] of the Travel Act violation"); *United States v. Stanley*, 765 F.2d 1224, 1241–42 (5th Cir. 1985) (denying an appeal challenging a Travel Act conviction and explaining that, "[i]n its charge to the jury, the trial court defined 'unlawful activity' as . . . includ[ing] the distribution of marijuana or the possession of marijuana with intent to distribute it in violation of federal law" and holding that the evidence in the record supported a conclusion that a defendant's decision to travel to Dallas was "to facilitate the marijuana transaction." (internal quotation marks omitted)).

The Fifth Circuit cases cited by Myers do not demonstrate the contrary.  The task of analyzing those cases is made more difficult because in none of the cases does the issue we must resolve appear to be the issue actually considered and discussed by the Fifth Circuit.  That may not be surprising given that the concentration on the categorical approach, and in particular upon the divisibility of criminal statutes for application of the modified categorical approach, is a relatively recent concern.

The case principally relied upon by Myers is *United States v. Logan*, 949 F.2d 1370 (5th Cir. 1991).  Myers cites the case because the elements of the Travel Act are described in terms of "unlawful activity" without including a

description of a specific violation. So, for instance, one element is described as travel "with the specific intent to promote, manage, establish, or carry on—or distribute the proceeds of—unlawful activity." *Id*. at 1380–81 (emphasis omitted). In that case the indictment charged a number of different drug crimes as well as violations of the Travel Act by two different defendants. *Id*. at 1373. The challenge to the Travel Act convictions was to the sufficiency of evidence, not to any failure to specify the underlying unlawful activity. *Id.* at 1380. It was always clear that the unlawful activity consisted of controlled substances offenses. No other type of "unlawful activity" as defined in the Travel Act was at issue. As described by the Fifth Circuit, the relevant counts of the indictment for which the defendants were found guilty by the jury specified the unlawful activity as the "intent to facilitate the carrying on of a drug distribution business." *Id*. at 1381–82.

The same is true for another case cited by Myers, *United States v. Millet*, 123 F.3d 268 (5th Cir. 1997). Again, the challenge was to the sufficiency of evidence, but in the course of its discussion the court stated that the indictment properly charged a violation of the Travel Act, including that it "properly identifie[d] the unlawful activities," in that case extortion including violation of the Hobbs Act. *Id*. at 278.

Myers also relies upon *United States v. Jones*, 642 F.2d 909 (5th Cir 1981). In that case the defendant challenged his Travel Act conviction on the grounds that such a conviction required proof that the activity was unlawful "in the state of destination subsequent to the interstate travel," and that the travel was necessary to facilitate the commission of the unlawful act. *Id.* at 912. The court rejected the challenges as based on incorrect understandings of the law. In the course

of its discussion the court quoted an instruction given to the jury that identified the elements of the offense as including "specific intent to promote an unlawful activity," without specifying the activity. *Id*. at 915. The court went on to observe, however, that "[f]ailure to give an instruction that is covered adequately elsewhere in the charge is not reversible error." *Id*. The court specifically stated that "[b]y their verdict, the jurors found that Jones engaged in the 'unlawful activity' of running a 'business enterprise involving gambling.'" *Id*. at 912.

Where the Fifth Circuit may differ from our court and other circuits pertains to a somewhat different question: whether a Travel Act conviction requires a finding that the defendant's activity was unlawful under a specific state or federal statute. The D.C. Circuit discussed that question at some length, including the different approach taken by the Fifth Circuit, in *United States v. Jones*, 909 F.2d 533, 537–38 (D.C. Cir. 1990). It concluded that, in contrast to most circuits (including ours), the Fifth Circuit does not require that the specific elements of the underlying law that constitute the unlawful activity be found as elements of the Travel Act offense. Rather, it is sufficient under Fifth Circuit law to specify a generic version of the predicate underlying unlawful activity. *Id*. at 537. For example, as described by the Fifth Circuit in another of its opinions, it would be enough to identify the unlawful activity as "'[a]rson' [because that] is a commonly used and understood word . . . . There is no requirement that the jury be instructed on the Maryland definition of arson." *United States v. Conway*, 507 F.2d 1047, 1051–52 (5th Cir. 1975). The D.C. Circuit went on to explain why it concluded that the Fifth Circuit's approach is incorrect, and, as noted, our court's approach is different as well.

That does not say, however, that the Fifth Circuit does not treat the underlying unlawful activity as an element of a Travel Act violation, albeit in generic form rather than tied to a specific state or federal statute. Neither party identified a Fifth Circuit case that involves a Travel Act conviction in which the underlying unlawful activity is not specified, and we did not find one either.

### 2.  *The* Shepard *Documents*

The Supreme Court has noted that looking at the underlying indictment may be useful in some instances to determine whether listed items in a statute are elements or means. *Mathis*, 136 S. Ct. at 2256–57. As noted in *Descamps*, "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." 570 U.S. at 272. Conducting that examination in the Fifth Circuit cases that the parties here identified supports the conclusion that the Fifth Circuit requires the identification of the underlying unlawful activity as an element of a Travel Act violation, even though it does not require incorporation of the elements of a specific state or federal statute covering that underlying activity as elements of the Travel Act offense.

Looking at the underlying documents in Myers's own case points to the same conclusion. The *Shepard* documents show that the charge against Myers under the Travel Act was for interstate travel to promote or facilitate a "business enterprise involving . . . narcotics or controlled substances." *See* 18 U.S.C. § 1952(b). The superseding information described the specific "unlawful activity" as the "possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)." The plea agreement stated that

Myers pleaded guilty to "the offense alleged in Count One of Superseding Information." Myers argues that the BIA erred in referencing the superseding information because it conflated conduct with elements. But the BIA only peeked at the superseding information to determine if a listed item from the definition of "unlawful activity" was included as an element of the offense, not to find out the specific nature of Myers's offense. *See Mathis*, 136 S. Ct. at 2256.

### 3.   *Pattern Jury Instructions*

Myers cites the pattern jury instructions used in the Fifth Circuit at the relevant time to argue that identification of a specific unlawful act was not required for a Travel Act conviction. We are not persuaded. To begin with, pattern jury instructions are not precedent and cannot supersede Fifth Circuit decisions. Nor do they clearly demonstrate the point that Myers is trying to make.

Myers quotes Fifth Circuit Pattern Criminal Jury Instruction § 2.74 (2015 ed.), for instance, as including the following as one of three elements for a violation of the Travel Act: "*Third*: That subsequent to the act of travel [use of the mail] [use of any facility] in interstate commerce [foreign commerce] the defendant did knowingly and willfully promote, manage, establish, or carry on [distribute the proceeds of] [commit any crime of violence to further] such unlawful activity." Myers also observes that under the jury instruction note, the jury is informed that "unlawful activity is defined under 18 U.S.C. § 1952(b)" and "[t]he appropriate *one(s)* should be specified and addressed, as necessary, in the instructions provided to the jury." Fifth Circuit Pattern Criminal Jury Instruction § 2.74 note (emphasis added by Myers). Myers highlights the word

"one(s)" to support his contention that more than one unlawful activity can be at issue in the Fifth Circuit.

The pattern instructions cannot support the weight Myers attempts to place on them. On their face, they are tools intended for modification by the district court for use in a particular case. Where it is clear from other jury instructions what unlawful activity is charged, it may not be necessary to repeat the description of the unlawful activity. In the presumably rare case where more than one type of unlawful activity is alleged, the district court is directed to "specif[y] and address[ the instructions], as necessary." *See id.* That does not suggest lumping the multiple forms of unlawful activity together. Rather, we infer that the district court would adapt the pattern instruction as needed to specify the allegedly unlawful activity, as Fifth Circuit precedent suggests is required.

In sum, whether the Fifth Circuit requires that the precise "unlawful activity" among the alternatives be listed in § 1952(b) of the Travel Act does not appear to have been directly addressed by that court. It may be that the subject has not arisen because it is likely a rare case when the nature of the unlawful activity is at all in doubt. Nonetheless, it appears to us from the Fifth Circuit cases that the specification of "unlawful activity" is treated as an element for a conviction under the Travel Act.

## B. *Myers's Conviction*

Because the Travel Act is divisible, the modified categorical approach may be employed to determine whether Myers's conviction was for a controlled substance offense. Under the modified categorical approach, "a sentencing [or

immigration] court looks to a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. There are no jury instructions to review in this case because Myers pleaded guilty to violating the Travel Act, but the superseding information and plea agreement show that Myers pleaded guilty to 18 U.S.C. § 1952(a)(3), and that the "unlawful activity" was "possession with intent to distribute methamphetamine." Myers's conviction was for a controlled substance offense. *See Johnson v. I.N.S.*, 971 F.2d 340, 342 (9th Cir. 1992) (holding that, where a petitioner pleaded guilty to "traveling in interstate commerce with the intention of distributing the proceeds derived from the unlawful distribution of narcotics and controlled substances," this court "ha[d] no hesitancy in concluding that [the defendant] was convicted of violating a law relating to a controlled substance" (some alterations incorporated) (internal quotation marks omitted)); *Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1156 (9th Cir. 2003) ("*Johnson* applies where an immigrant explicitly pleads guilty to (or the jury finds) a violation of the specific statutory provision that obviously relates to drugs."). Accordingly, Myers was properly held to be removable.

Myers argues that *Johnson* is irreconcilable with *Mellouli v. Lynch*, 135 S. Ct. 1980 (2015). In *Mellouli*, a lawful permanent resident pleaded guilty to a misdemeanor offense under Kansas law for possession of drug paraphernalia. Neither the criminal charge nor the plea agreement identified a specific controlled substance. *Id*. at 1983. At the time, Kansas's controlled substance schedules included at least nine substances not included on the federal schedules. *Id*. at 1984. The Government alleged that the petitioner was deportable based on his conviction relating to a controlled substance. *Id.* at 1983–84. The Supreme Court rejected that

argument, noting that Kansas's schedules were overinclusive as compared to their federal counterpart and further that the BIA's approach to drug paraphernalia possession offenses was not supported by statute or logic. *Id.* at 1984. In contrast, Myers was convicted of a federal crime, the Travel Act, that defines "controlled substances" in terms of the federal CSA and its schedules. *See* 18 U.S.C. § 1952(b). His crime related to possession with intent to distribute methamphetamine, not possession of paraphernalia. *Mellouli* does not speak to Myers's case. We therefore conclude that Myers's conviction qualifies as a controlled substance offense under the modified categorical approach and we deny the petition for review as to that issue.

## III.    Cancellation of Removal

The BIA concluded that Myers is ineligible for cancellation of removal. A person seeking cancellation of removal must have "resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a). The period is "deemed to end," among other times, "when the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1).

The BIA concluded that Myers is ineligible for cancellation of removal "because the notice to appear was served upon him in January 2013," which is less than seven years after he was admitted to the United States in September 2006. The IJ did not make any finding regarding when the notice was served on Myers. The IJ decision simply stated that he was "placed into proceedings on January 3, 2013."

Myers contends that he was not served with the notice until October 30, 2015, a date that is more than seven years

after his admission in September 2006. The notice contained a certificate of service signed by an immigration officer, but the space for the date of service was left blank. The form shows Myers's signature and an immigration officer's signature related to a request for a prompt hearing, but those signatures are dated October 30, 2015.

The Government acknowledges that the document is unclear, and it does not dispute the plausible contention that Myers was not served until October 2015. The BIA could not have relied upon any finding by the IJ regarding the date of service, as the IJ made no such finding. The conclusion by the BIA that Myers is ineligible because he lacked the seven years of presence then required by the statute was not supported by substantial evidence.

The Government states that "these dates are ultimately irrelevant" because, under 8 U.S.C. § 1229b(d)(1)(B), Myers's "continuous physical presence in the United States" ended when he violated the Travel Act in 2011. The Government argues that, because Myers had not resided in the United States for seven years in 2011, any error was harmless. *See* 8 U.S.C. § 1229b(a)(2).

The problem with the Government's argument is that the BIA did not make any such determination.[5] "In reviewing the

_____

[5] Moreover, the cases that the Government cites to support its position detail situations in which it was clear from the record that the agency actually considered a relevant issue. *See Vides-Vides v. I.N.S.*, 783 F.2d 1463, 1469 (9th Cir. 1986) ("Although the new IJ failed to expressly state that he had familiarized himself with the record in the case as required by 8 C.F.R. § 242.8(b), the failure to do so was harmless error since the IJ began the second hearing by summarizing what went on at and subsequent to the first hearing. There is therefore no question that the new IJ was in

decision of the BIA, we consider only the grounds relied upon by that agency." *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004). "If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case." *Id.* This case must therefore be remanded to determine whether Myers is eligible for cancellation of removal.

## IV. Conclusion

The BIA correctly determined that the Travel Act is divisible and that Myers is removable based on his conviction for a controlled substance offense. As to that issue, the petition for review is denied. However, the conclusion that Myers is ineligible for cancellation of removal due to an insufficient period of presence in this country was not supported by substantial evidence. The petition for review is granted in part. The matter is remanded for consideration of the claim for cancellation of removal.

**PETITION FOR REVIEW GRANTED IN PART AND DENIED IN PART; REMANDED.**

---

fact familiar with the record."); *Najmabadi v. Holder*, 597 F.3d 983, 990–91 (9th Cir. 2010) (affirming the denial of a motion to reopen removal proceedings where, "[t]hough the board did not directly reference [all of the petitioner's] statements," it "adequately considered [the petitioner's] evidence and sufficiently announced its decision," and the Court "ha[d] no doubt that the BIA would reach the same decision if we asked it to focus more closely on the contents of [the petitioner's] affidavit."). That is not the case here.